05|09

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**RECEIVED**

MAR 0 5 2019

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

**RONALD G. WADE, JR.** )
)
   **Plaintiff** )
)
**v.** )
)
**(1) CITY OF TULSA** )
**(2) DON DERAMUS, individually and in his** )
official capacity )
)

**19 CV   120 JED - FHM**

Case No. _____

**JURY TRIAL DEMANDED**

### COMPLAINT FOR DAMAGES
**(Violation of Civil Rights, Negligence, Governmental Tort Claim)**

### INTRODUCTION

In the afternoon of May 9, 2017, Plaintiff Ronald G. Wade, Jr had just started the lawnmower when his backyard was swarmed by Tulsa PD and Jenks PD. It was 4-5 officers and the Plaintiff believes all guns were drawn and on display. The officers were yelling "get your hands up", so the Plaintiff raised his hands. Through no intent on the Plaintiff's part, the Plaintiff's hands started to drop and the Officer known as Don Deramus went locked and loaded 8" from the center mass above the skull.

The Plaintiff was wearing an old t-shirt, shoes and shorts, is 62 and represented no threat, but Defendant Deramus made it clear, give him a reason to pull the trigger and he would.

A few days prior the Plaintiff had received a call from Officer Deramus, insisting the Plaintiff had threatened bodily harm to the family of Tulsa Attorney Jason A. Robertson, whom is known as a pathological liar. It was a very contentious discussion, as the Plaintiff does not ever threaten violence.

The Plaintiff had designed a Reward/Bounty Poster for an Open Record, including Robertson's picture. The poster would be considered libelous, but not threatening and libel

IFP/3 summons

has to prove the felony allegations wrong and Robertson could not do that. The poster appeared to be an item of contention for Officer Deramus and the Plaintiff was concerned enough about the over-exuberance of Officer Deramus, the Plaintiff took a copy of the Reward/Bounty down to Jenks PD. Several officers viewed the poster in committee and the deputy returned  and assured me I would not be arrested in Jenks. The Reward/Bounty is also a part of a Court Record, and it is assumed direct threats of bodily harm, do not get read into the record.

This very Court has it's own copy of a news release and the poster art. Both were read into the record, on 18CV-102-GKF-FHM, adjudicated by Judge Gregory Frizzell. The efforts of the plaintiff are injected with "wry humor", but no threats of violence. You either have that propensity or not.

The Plaintiff was whisked into Officer Deramus's auto and repeatedly asked Officer Deramus:

    A./ What did I do?

    B./ Where am I being taken, as I did not threaten bodily harm?

    C./ Can I see the paperwork?

Officer Deramus responded with similar words, that conveyed the same meaning, in that the response was consistently:

    A./ He warned me.

    B./ I don't need to know.

    C./ I don't need to see the paperwork.

The Plaintiff and Officer Deramus arrived at Tulsa Center for Behavioral Health (TCBH), so the Plaintiff had the answer on (B). As Officer Deramus was pulling the papers off his clipboard, the Plaintiff  again asked, could I have a copy? Since others were present, Officer Deramus responded "no".

The Plaintiff was clueless and refused all requests for cooperation and divulging Private personal information and repeatedly asked, what am I accused of? Dr. Smith finally permitted the Plaintiff to read the Peace Officer's Statement For Protective Custody (Exhibit #1), as sworn to by Officer Deramus. The Plaintiff immediately spotted these extremely inflammatory words, buried in the middle:

**"Ron Wade began to sent Robertson emails that stated he knows where Robertsens lives and what his family looks likes like."**

The Plaintiff ended up spending 34 days wrongfully confined to mental wards and not only lost his freedom, but had his life shattered and business destroyed because Deramus knowingly, inserted the above threat, so the Plaintiff could be picked up under 43A O.S. § 1-103, as representing a clear threat to the well being of Mr. Robertson and his family.

Officer Deramus, while abusing the powers invested in him, initiated an Emergency Mental Health Detention, knowing the Plaintiff did not make a threat of bodily harm. In fact, Officer Deramus, refused all requests to see the "probable cause" paperwork and didn't bother with a copy of the email indicating an assault on Robertson's family was imminent. The threat is very specific and inflammatory, yet Officer Deramus didn't bother with a copy. He included the Reward/Bounty as evidence, but forgot to get the actual threat. This clearly indicates premeditation, as Officer Deramus feared the Plaintiff reading the falsified threat in his presence. Officer Deramus wanted the Plaintiiff to feel his power and control as an Officer.

Furthermore, throughout the 22 days in detention, the Plaintiff was unable to obtain a copy of Officer Deramus's affidavit and so the Defendant was trapped in a Mental Health Ward trying to defend against threats the Plaintiff never made, but more importantly was denied the right to defend against the charges as the Plaintiff had no means to understand what he was even charged with.

Throughout this false imprisonment, the Plaintiff made clear to all Doctor's, "if I made the threat, get a copy and I will go through all the therapy you want", but the Plaintiff never made any threat of harm and nobody can produce a single email where the Plaintiff represented a physical danger to Mr. Robertson, beyond a threat to have him jailed..

In fact, in a different legal proceeding, Robertson was asked by the Supreme Court, State of Oklahoma, to respond to a Motion over Disbarment, over a total of 23 threats of bodily harm and Robertson produced a lot of words, but no words that qualified for an Emergency Detention or representing a threat of bodily harm, let alone the specific threat alleged by Officer Deramus. The law doesn't allow Officer Deramus to supply different words, he needs these words, for probable cause to exist:

**"Ron Wade began to sent Robertson emails that stated he knows  where  Robertsens lives and what his family looks likes like."**

Furthermore, failure to provide copies of probable cause, including the threats, forced the Plaintiff into an adversarial relationship with the Psychiatrists that held the key to the Plaintiff's freedom, which in turn caused the Plaintiff to acquiescence before the Judge, as if guilty. The Plaintiff, after two weeks, was not going to protest innocence. The Plaintiff had learned first hand, best not to make waves and everybody is protests innocent in a mental ward.

The Plaintiff ultimately was  forced to create a false trauma, over the Plaintiff's recent divorce, so the Plaintiff could be successfully "fixed" by Psychiatrist Dr. Ann Bliss, whom also got sucked into the pathological lies of Mr. Robertson.

The crimes of these Defendant's exceed heinous, malicious and represent the highest level of depravity, as human beings. The Plaintiff was not only falsely imprisoned, he was denied access to the very paperwork the Plaintiff needed to have his day in court, and to get out of mental health custody.

There was a singular intent behind these events and it was to destroy the Plaintiff to eliminate Mr. Robertson's exposure on a felony document tampering charge.

Everything the Plaintiff has ever done is in pursuit of a fair day in Court, free from pathological lying from a corrupt beyond redemption attorney.

## JURISDICTION AND VENUE

The acts and omissions which are the subject of this action occurred in the Central District of Oklahoma.

Jurisdiction is conferred by 28 U.S.C.§ 1343, which provides for original jurisdiction of this Court in suits authorized by 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom, or usage of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States.

Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law. 28 U.S.C. § 1367.

Plaintiff's action for damages is authorized by: (1) 42 U.S.C. § 1983 which provides for redress of the deprivation under color of any statute, ordinance, regulation, custom or usage of any state or territory of any rights, privileges, or immunities secured to all the citizens or persons within the jurisdiction of the United States; (2) The Fourteenth and Fourth Amendment to the Constitution of the United States; (3) Other provisions of law, either federal or state, which are unknown to the Plaintiff at this time but may be ascertained as further facts are known through discovery; (4) 42 U.S.C. § 1988, which authorizes Plaintiffs' application for attorney fees and provides that a court may award attorney fees as part of costs in any action or proceeding to enforce a provision of 42 U.S.C. § 1983. (5) The Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151 et seq.

Venue is proper because all Defendants reside in the Central District of Oklahoma and a

substantial part of the events giving rise to the causes of action occurred in the Central

District of Oklahoma. Venue is proper under 28 U.S.C. § 1331.

## PARTIES

Plaintiff at all times material to this complaint was a resident of the State of Oklahoma and

resides in Jenks, Oklahoma, Tulsa County, within the Central District of Oklahoma.

Defendant Don Deramus was at all times relevant to this complaint a resident of the

Central District of Oklahoma. During the events reflected herein, Officer Deramus worked for

the Tulsa Police Department, Tulsa, Oklahoma. Defendant Deramus performed tasks – such

as gathering evidence, interviewing witness, and trying to amass sufficient false evidence to

justify mental health detention – which is not within the core peace officer function. Officer

Deramus only has qualified immunity for actions which are within the core peace officer

function and – since fabricating evidence and suppressing exculpatory and inculpatory

evidence were established constitutional violations, well prior to the case contained herein –

Defendant  is entitled to no protection from that qualified immunity.  Officer Deramus is sued

in his individual capacity and in his official capacity.

Defendant City of Tulsa is a municipality, which at all times relevant to this complaint was

officed in Tulsa, Oklahoma.

## FACTUAL ALLEGATIONS

At the beginning of May, 2018 the Plaintiff received a phone call from TPD Officer Don

Deramus. In the continuing escalation between the Plaintiff and Tulsa Attorney Jason A.

Robertson, over felonies committed by Mr. Robertson,  Officer Deramus called and accused

the Plaintiff of threatening bodily harm to Mr. Robertson's family.

It was a contentious discussion, as the Plaintiff does not threaten physical violence for any

reason, and the only parties in need of Police Services,  were Mr. Robertson, Judge Pace and

Judge Musseman.

The Plaintiff was concerned enough, to go down to the Jenks PD and show them the innocuous $200 Reward/Bounty Poster for an Open Record. The poster was reviewed in committee, and Jenks PD assured the Plaintiff, arrest would not occur in Jenks, and the Jenks PD stated the Plaintiff had violated no laws. The Plaintiff then left Officer Deramus a phone message about what the Jenks PD had stated, while also reiterating the Plaintiff made no threats and the Plaintiff did not want to get crossways with TPD. This was a reconcilatory message, to mitigate the tone of our earlier conversation.

On May 9, 2018, and according to the testimony of Mr. Robertson, Mr. Robertson was contacted by Mr. Tom Cooper, President of the Warren Foundation, and according to Robertson, Mr. Cooper stated Robertson's life was in peril.

Later the afternoon of May 9th, the Plaintiff had just started the lawnmower, when he was surrounded by 4-5 officers with guns drawn. The Plaintiff raised his hands and by natural inclination, they started to drop. Officer Deramus, then went locked and loaded 8" above the top of the Plaintiff's head. Officer Deramus chose the locked and loaded position, where center mass would be through the top of the skull, traveling straight down through the body. If an Officer wants to intimidate a citizen you would use the manly stance of elevating your hands well above a senior citizen's skull and pointing straight down.

Officer Deramus quickly cuffed the Plaintiff, and whisked the Plaintiff into his car. The Plaintiff requested an explanation and if the Plaintiff was going to jail? Officer Deramus insisted the Plaintiff did not need to know and that Deramus had warned the Plaintiff, about threatening family. The Plaintiff denied the allegations and repeatedly asked why the Plaintiff was being detained and where was the Plaintiff being taken? The response every single time was the Plaintiff does not "need to know" and the Plaintiff could not see the paperwork.

Officer Deramus did not appear to know it is customary to allow citizen's to see the charges against them and it was required by law he abused for Protective Custody, in this specific instance as 43A O.S. § 5-207 (OSCN 2019):

**(C)** *The officer shall give a copy of the statement to the person or the person's attorney upon the request of either.*

Officer Deramus, repeatedly stated the Plaintiff did not "need to know" and that the Plaintiff would know when the Plaintiff got there. Furthermore, Officer Deramus kept insisting, he doesn't make mistakes and as far as he was concerned the Plaintiff threatened family. It did not seem to matter whether the Plaintiff was actually innocent. The Plaintiff denied the allegations vehemently and repeatedly asked to see the paperwork. Every request was denied.

The Plaintiff and Officer Deramus, arrived at Tulsa Center for Behavioral Health (TCBH) and as Officer Deramus was pulling the drop-off paperwork from his clipboard, the Plaintiff again asked to see the detention papers, and as medical personnel were within earshot, Officer Deramus responded with a simple "no".

Officer Deramus left and the Plaintiff was uncooperative and refused to divulge private information. Dr. Smith, the intake doctor, would ask questions and the Plaintiff would refuse to answer, standing on Privacy and HIPAA, and kept asking "why was the Plaintiff was in custody"? Dr. Smith didn't appear to understand the Officer Deramus Statement and so relented and allowed the Plaintiff to read the top page, which was the sworn Peace Officer's Statement For Protective Custody. (Exhibit #1).

Although, disguised in bunch of confusing nonsense, these words had been inserted in order to meet the requirements of Emergency Custody under Oklahoma 43A O.S. § 1-103 (OSCN 2019):

**"Ron Wade began to sent Robertson emails that stated he knows where  Robertsens lives and what his family looks likes like."**

The Plaintiff stood up and informed Dr. Smith he would speak no further until the email was produced and went into the next room and lay on a bench. It should be noted that Dr. Smith had just had his nose broken by a combative patient and was wiping blood the whole time.

After an hour or so, the Plaintiff was collected by a big guy named Heath, who indicated it was best to be willingly escorted. The Plaintiff was then taken into the captivity of the inner ward..

The Plaintiff sat in a chair in the hall the first night, refused to eat and refused to cooperate in any therapy or intake until the emailed threat was produced. The Plaintiff understood a threat of danger had to be present, for probable cause to exist. The hunger strike lasted 3 days, and then the Plaintiff realized the futility in not eating. The Plaintiff lost 16 lbs in 6 days before being transferred to Laureate Psychiatric Clinic.

The Plaintiff was adversarial, but not threatening and would accost the Doctors to ask if they had the email, so the Plaintiff could begin therapy for making a threat upon the life of another. The Plaintiff refused to talk for most of the time, but on about the 4th day, the Plaintiff saw the Reward/Bounty Poster on the clipboard of a Doctor. The Plaintiff asked if that's why the Plaintiff was being held and the Doctor replied "I don't even know what it represents". Nobody seemed to understand the basis for custody as the Plaintiff  was not considered homicidal at TCBH.

The Plaintiff had a standing offer, produce the email and I will go through therapy for making a threat and then forgetting the Plaintiff made a threat. The Plaintiff had already asked his daughter to search his Gmail for the words alleged, and as expected there were none.

Although Robertson could not produce the threat for Protective Custody for Deramus or anyone, for that matter, on May 11, 2017, Robertson appeared before Judge Martha Rupp Carter and added 22 more threats of bodily harm. A temporary Restraining Order was issued by Judge Carter, whom had previously denied the Plaintiff's attempt to get a restraining order as Robertson had stalked down his ex-wife's brand new unpublished address, so he could harass her with certified mail, knowing the Plaintiff had taken her out of the case, due to his criminal conduct. Judge Carter then recused, as she should have before issuing the temporary order.

On May 15, 2018 the Plaintiff's insurance carrier Community Care, insisted the Plaintiff be transported to Laureate Psychiatric Clinic. The Plaintiff believes he was scheduled to be released, until insurance intervened. Since Judge Pace is the "in house" Judge at TCBH, she had the good sense to recuse.

Laureate employed a less restrictive phone policy, and admittedly, the Plaintiff called Mr. Robertson's work phone and a partner's phone, and left a message. The message was simple "the Doctor's want to see the email, so the Plaintiff could begin therapy". The Plaintiff also tried to contact Officer Deramus to get the email. The Plaintiff could make no progress on therapy.

On May 16, 2018, Dr. Ann Bliss, Psychiatrist with Laureate informed me, I could only make calls in the presence of an employee. The Plaintiff inquired as to why, and it was indicated Dr. Bliss had received a call from a partner at Pierce, Couch, Hendrickson, Baysinger & Green and he had complained.

The Plaintiff informed Dr. Bliss, the Plaintiff just wanted the email, so the Plaintiff could begin therapy. Later that same day, the Plaintiff was served with the Restraining Order from May 11, 2018, and Dr. Bliss handed the Plaintiff other paperwork simultaneously. The Plaintiff did not understand what had happened, until much later.

At this point, and throughout this ordeal, the Plaintiff did not have a complete copy, of the the "probable cause" affidavit. The call from the partner, was promoting Robertson's falsified assertions, and Dr. Bliss was given the impression, I made the 22 threats of bodily harm, while in Laureate. The Plaintiff was deemed homicidal, but was allowed to go to the pool and participate in all extracurricular activities. Dr. Bliss did not treat the Plaintiff as homicidal and had been mislead.

It was around the 18th day of false imprisonment, that the Plaintiff realized the only hope of getting out was to give Dr. Bliss a trauma, so she could "fix" the Plaintiff. The Plaintiff could not go through therapy for homicidal impulses, when they did not exist. By that time, the Plaintiff had asked that a perceptive RN named Laura, to sit in on all future sessions, as Dr. Bliss lacked direction on what disorder the Plaintiff suffered from.

On or about May 29th, in a session between the Plaintiff, Dr. Bliss and RN Laura, the Plaintiff betrayed his ex-wife and made her a villain in the divorce. The Plaintiff created a non-existent trauma and brought enough dirt in, to elicit tears. The three of us shared hugs and I was released May 31, 2018, after 22 days. Most other patients were out in 3, but I never quit protesting my innocence and nobody seemed to know what to treat the Plaintiff for. It was consistently believed that Officer Deramus had a lawful reason, for picking me up.

Due to this Court Commit the Plaintiff was under the Court's Jurisdiction for one year. The Plaintiff's first outpatient appointment with Counseling & Recovery Services was June 6, 2018. In a misguided attempt to assert the Plaintiff's rights, the Plaintiff refused to fill out paperwork, but did agree to go through therapy. The Plaintiff was informed no paperwork, means no therapy, by the therapist Gerald. Gerald agreed to notate the Plaintiff presented for therapy.

On June 8, 2018, the Plaintiff was picked up by County Deputies and transported to TCBH for re-indoctrination, due to non compliance with the treatment plan. At this point, the Plaintiff

still only had one page of the secret "probable cause" paperwork and believed there to be only one legal proceeding, that originated from the efforts of Officer Deramus.

As the Plaintiff learned, Dr. Bliss had executed a 3rd legal proceeding, off of the original threat, manufactured by Officer Deramus.

Due to these events, the Plaintiff spent an additional 12 days at TCBH. The Plaintiff went through no therapy during this period and the Doctor's would simply apprise the Plaintiff of when a Special Judge would be available, as Judge Pace had recused again.

The Plaintiff was scheduled to appear before Judge Dreiling on June 13, 2018, when Community Care became involved again. According to TCBH, they changed the discharge paperwork to Laureate, and could not redo in time for the Plaintiff to appear. It took a week to get Judge Dreiling back and the Plaintiff was released one week later on June 20, 2018.

The Plaintiff's first outpatient therapy appointment was June 22, 2018. The intake psychologist was Gerald and Gerald diagnosed the Plaintiff as having no disorder. Next the Plaintiff had an appointment with Vicky, whom informed Gerald, there had to be a diagnosis for the system to accept the report, so they agreed on unknown mood disorder, which was the mildest.

On June 25th the Plaintiff had an appointment with CRS Dr. Bruce Pioxotto, whom immediately took the Plaintiff off all psychiatric medications. According to Dr. Peixotto, he did not want the Plaintiff taking psychiatric medication that wasn't needed.

With all the controversy on the above going on, Mr. Robertson went before a new Judge and swore to the same 22 threats, even though he had admitted to the Supreme Court he had hyperbole, but not a single threat similar to the one above. This occurred December 4, 2018 and is a clear reflection of pathological lying and that Mr. Robertson needs to spend his life in prison for making victims out of everyone he lied to.

## FACTUAL ALLEGATIONS ON BLOOD DISORDER

During the three mental ward stays, the Plaintiff was put on the psychiatric drug Depakote and taken off, 3 different times. On November 15, 2018, the Plaintiff called an ambulance to be transported to the hospital for having waves of pain, with no distress and a general inexplicable physiological state, including visual occlusion, as if seeing through prisms. The hospital checked the Plaintiff out, and indicated they could find nothing wrong.

On November 16, 2018, an RN with St. Francis, called and informed the Plaintiff his Valproic Acid Level was not measurable and the Plaintiff should immediately contact his Primary Physician. The 3 days prior to the hospital visit, had been miserable, including the Plaintiff's fear of driving with the visual occlusion. The blind spot was in the center and the Plaintiff could only see the peripheral.

Valproic Acid and Depakote are one in the same and Depakote is prescribed to increase therapeutic levels to prevent seizures.

The Plaintiff had been in a three day seizure "aura" and the Plaintiff was attempting to seizure. The Plaintiff would want to drop to the floor and writh in agony without agony. There were at least 4 waves on the walk to the restroom alone and then it just stopped and went away.

The Plaintiff was fortunate to have Depakote on hand, and immediately went back on Depakote for a fourth time, but now for a rare blood disorder, originating from the actions of Officer Deramus.

On May 30 the Plaintiff's Depakote was 77.2 against therapeutic levels of 50-100, on November 15, 2018 it was immeasurable,  on December 4, 2019 it was immeasurable, and on December 14, 2018 it was <12.5. The Plaintiff had normal Depakote readings before the incidences reflected herein.

This makes this crime even more heinous in nature, as the Plaintiff now has a rare blood disorder and the Doctor's agree I was probably attempting to seizure as the natural inclination of the body is to drop to the floor. If I begin to actually seizure, the Depakote and other anti-seizure medications will be increased. As the Plaintiff attempted to seizure, the Plaintiff now has a seizure disorder, in addition to a rare blood disorder.

## FIRST CAUSE OF ACTION

(Violation of Civil Rights 42 U.S.C. § 1983)

(Plaintiff against Don Deramus)

Plaintiff hereby incorporates by reference, each and every allegation, contained in the preceding paragraphs as if fully set forth herein.

At all times material to this complaint, Defendant Deramus was acting under color of law in violating the Plaintiff's Constitutional Rights, as herein alleged, under the Fourth and Fourteenth Amendments to the Constitution of the United States. The Fourth and Fourteenth Amendments are made applicable to the States pursuant to 42 U.S.C. 1983.

Plaintiff was deprived of rights, privileges, and immunities secured to him by the Constitution of the United States and laws enacted thereunder, when Defendant Deramus detained the Plaintiff without probable cause, fabricated and manufactured evidence and refused to provide the Plaintiff a copy of the evidence in his possession, as required under Oklahoma Law. The Plaintiff spent a total of thirty four days falsely imprisoned, as Doctor's tried to determine exactly what was wrong with the Plaintiff.

Officer Deramus was motivated by bad faith, in that Officer Deramus felt the Plaintiff had disobeyed his order of never using the word family, and had a preference and predilection to falsify the evidence, to demonstrate that the Plaintiff was guilty. Defendant knew the truth as he committed these atrocities against the Plaintiff.

Plaintiff has a constitutional right to be free of unreasonable seizure, made without

probable cause, and also seizures containing falsified statements to meet the minimum

statutory requirement for Emergency Protective Custody, by indicating a danger to others,

when no such danger existed.

Furthermore, the Plaintiff has a constitutional right of due process to a fair trial and freedom

from unlawful detention, wherein the the investigating officer of a complaint, has assisted

private citizens in taking the American Citizen "off" the streets, lacking probable cause.

Therefore, the Defendants, and each of them, are liable to the Plaintiff under 42 U.S.C.

1983.

In acting as alleged herein, Defendants, and each of them, with amlice and intent, caused

severe physical and emotional injuries, as well as other damages, all in an amount to be

determined at trial.

### SECOND CAUSE OF ACTION
(Violation of Civil Rights – Monell)
(Plaintiff against City of Tulsa)

Plaintiff hereby incorporates by reference, each and every allegation, contained in the

preceding paragraphs as if fully set forth herein.

Defendant City of Tulsa, knowingly, with gross negligence, and in deliberate indifference to

the constitutional rights of citizens, maintained and permitted an official and custom of

permitting the occurrence of the types of wrongs set forth herein above and hereafter.

Plaintiff has a constitutional interest, pursuant to the Fourth and Fourteenth Amendment to

the United States Constitution, to be free from incarceration, corrupted investigation and

detention, based on the City's policy of allowing arrests without probable cause and failing to

obtain pertinent exculpatory and inculpatory evidence. These policies and customs include

the deliberate indifference in the training of it's officers in making lawful detentions.

These policies and customs also include express and/or tacit encouragement and

acceptance of detentions/arrests without probable cause, the ratification of police misconduct, and the failure to conduct adequate investigation of police misconduct, such that future violations do not occur. Furthermore, the only "duty of care" for the City of Tulsa was to produce a single email containing the base threat, that should have been possessed by Officer Deramus, all along. It should have been attached, as the sole basis for custody.

Furthermore, Officer Deramus simply needed to go ask Mr. Robertson for the email, but Police Chief Chuck Howard, City of Tulsa showed a deliberate indifference to whether it existed and whether Mr. Robertson had misled Officer Deramus. It was a simple email.

Plaintiff is informed and believes, and thereon alleges, that the customs and policies were the moving force behind the violations of Plaintiff's rights. Based upon the principles as set out in Monell v. New York City Dept. of Social Services, the City of Tulsa is liable for all of the injuries sustained by Plaintiff as set forth above.

In acting as alleged herein, Defendants caused Plaintiff severe physical, psychological and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

(Violation of Civil Rights 42 U.S.C. § 1983)
(Malicious Prosecution, Use of Fraudulent Investigatory Techniques, Procurement of Fabricated Evidence, Suppression of Inculpatory Evidence, Wrongful Conviction and Imprisonment)

Plaintiff realleges and restates all the foregoing paragraphs and further shows and informs the Court:

The illegal continuing confinement, malicious prosecution, procurement of unreliable case evidence, suppression of exculpatory evidence, and use of fraudulent investigatory techniques was brought about by Defendant Deramus, in concert with Cooper and Robertson. His actions were designed to prove a case against the Plaintiff, and to maintain

the detention once it was obtained, regardless of the Plaintiff's actual innocence or with reckless disregard to whether he was actually innocent.

Officer Deramus therefore caused the continued prosecution and continued threat of confinement of the Plaintiff. As a result of the indifference of Officer Deramus, the Plaintiff had a total of (3) legal proceedings initiated against him, which will be ongoing until June, 2019. Without the evidence which Officer Deramus wrongfully and unconstitutionally fabricated, there was no probable cause for the Plaintiff's Emergency Custody. Furthermore, by fabricating evidence, Mr. Robertson was encouraged to ramp up his efforts to destroy the Plaintiff, for making him look the fool. Had Officer Deramus followed the law, Mr. Robertson's attempt at a Restraining Order would have been denied, as retaliatory for the Plaintiff filing a legitimate request for a Restraining Order against Mr. Robertson, to protect his ex-wife from harassment.

Officer Deramus acted maliciously, in the fabrication of evidence, and was put out the Plaintiff did not obey a previous unlawful order he had issued. These acts were aggravated by his refusal to give the Plaintiff a copy of the mental health charges. Defendant Deramus knew the Plaintiff did not make the threat, repressed the papers the Plaintiff had a constitutional right to receive, and that there was no evidence to support the base threat:

**"Ron Wade began to sent Robertson emails that stated he knows where Robertsens lives and what his family looks likes like."**

The Plaintiff has sustained damages as a result of the actions of the Defendants. Those damages included wrongful imprisonment, mental and physical suffering, loss of income, loss of property, and other monetary damages.

Evidence which purported to be inculpatory was fabricated by Deramus. Because of Deramus's attempts to cover up and reshape the truth, the Plaintiff was forced to remain in custody, unable to mount a defense because Defendant intentionally magnified the suffering,

by withholding the information the Plaintiff required, to mount a defense.

In addition, Officer Deramus knew the Plaintiff wanted to see the threat, so the Plaintiff could begin therapy.

All the improper actions were in derogation of the rights to due process of law and to a fair trial under the Fourth and Fourteenth Amendments to the Federal Constitution.

Under color of state law, Deramus trampled the Plaintiff's established constitutional rights, causing severe emotional distress, irreversible significant psychological stress, humiliation, loss of income, loss of property, pain and suffering and other damages for which he is entitled to monetary relief. In addition the Plaintiff will be on a psychiatric drug for blood and there is no guarantee a seizure will not occur, in the future.

Defendants' actions were deliberate, reckless, wanton and/or cruel, justifying the award of punitive damages. .

### FOURTH CAUSE OF ACTION
(City of Tulsa Claim for Negligence Resulting in Wrongful Imprisonment)

Plaintiff realleges and restates the foregoing paragraphs and in addition shows and informs the Court:

Defendant Deramus constructed evidence which was key component in putting together a trumped up case against the Plaintiff through negligent analysis, irresponsible procurement of evidence, and reckless attention to duties regarding the reliability of evidence and the exculpatory nature of evidence. Officer Deramus also exhibited an apathy towards understanding the requirements and intent of the Mental Health Law and the Constitution of the United States, which always guarantees an understanding that Defendant's have an unconditional right to know the charges against them. They cannot be repressed and denied.

Negligence also existed in the continued custody of the Plaintiff and the continued custody

and probation despite the receipt of information which Officer Deramus knew or would have reason to know, was exculpatory to the Plaintiff. Officer Deramus fabricated a false threat and knew he could not produce the email, yet did nothing. The Plaintiff was clamoring to the entire City about the email.

Officer Deramus owed the Plaintiff a duty of care in both his actions, when Deramus was acting as a Peace Officer and when he was outside the core function of a Peace Officer. Deramus's performance of his duties did not meet professional standards.

These various forms of negligence constituted direct, proximate and primary causes of the Plaintiff experiencing injuries, pain, suffering, fear, mental anguish, PTSD , humiliation, loss of money and property, loss of companionship and income.

Because the Defendants' actions were reckless and wanton, the Plaintiff is entitled to punitive damages.

## **FIFTH CAUSE OF ACTION**
### **(CAUSE OF ACTION UNDER OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT)**
### **(MALICIOUS PROSECUTION AND NEGLIGENCE)**

The Plaintiff realleges and restates the foregoing paragraphs and further shows and informs the Court:

The Plaintiff timely filed a tort claim in the amount of $1,000,000,000, representing an assigned value for the 48,000 words the Plaintiff was forced to reveal that represent protected personal information and information protected under HIPAA. The Plaintiff was forced to violate his own rights, every time he spoke. The tort claim was served on June 8, 2018, against the City of Tulsa. The City of Tulsa did not respond and left the claim open.

The time to respond within 90 days expired and this action is brought within 180 days of the expiration.

The Plaintiff was maliciously prosecuted by Deramus, who had a personal stake in punishing the Plaintiff.

## SIXTH CAUSE OF ACTION UNDER OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT AND UNDER THE FEDERAL CONSTITUTION'S FOURTEENTH AMENDMENT FOR ASSAULT BY OFFICERS

Officer Deramus, with wanton disregard for the safety of a law abiding senior citizen, transported the Plaintiff to a facility, where it was customary to immediately control patients with psychiatric drugs. Officer Deramus had a duty to understand that psychiatric drugs are not meant to be forced upon any person, especially someone with no history of psychotic breaks and for which he knew was innocent.

As a result of being put on the Depakote and taken off 3 times, the Plaintiff now has a rare blood disorder, wherein Depakote barely exists. The Plaintiff's Depakote is not considered low, it is considered nonexistent and therefore, it is recommended the Plaintiff start taking Depakote at the same levels he was forced to take, while in captivity and if a seizure happens, the levels of Depakote will be increased..

The Plaintiff's tort claim notice was served on June 8, 2018 on the City of Tulsa. The City did not issue a letter of denial and according to People vs.Tom the claim was therefore confessed ninety days from filing. This action is brought within 180 days that of the ninety day confessed date.

## DAMAGES

The actions of Defendants deprived the Plaintiff of his civil rights under the Fourth and Fourteenth Amendment to the United States Constitution.

The unlawful and/or reckless and/or deliberate acts of Defendants inflicted severe emotional distress, caused the Plaintiff great humiliation, caused him pain and suffering, caused him loss of income and was intended to destroy the functionality of his mind.

Punitive damages are justified by the deliberate and/or reckless and/or wanton and.or cruel activities of the Defendants.

## PRAYER FOR RELIEF

**WHERFORE**, premises considered, Plaintiff requests the following relief:

A./ Compensatory damages in the amount of $1,000,000,000.

B./ Punitive damages in the amount of $1,000,000,000.

C./ Costs and attorney fees pursuant to 42 U.S.C. § 1988

D./ Such other relief as the Court may deem just and proper.

A jury trial pursuant to the Seventh Amendment of the federal constitution, is demanded as to all claims.

Respectfully Submitted

*Ronald Gene Wade, Jr*

Pro Se
Ronald Gene Wade, Jr
11405 S Locust Ave
Jenks, Ok 74037
(918) 528-6663

*Plaintiff's Exhibit*

# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY   **#4**
## STATE OF OKLAHOMA

IN THE MENTAL HEALTH OF       )

     **Ronald Wade**      )     MH _____

_____ )

## PEACE OFFICER'S STATEMENT FOR PROTECTIVE CUSTODY

I, the undersigned peace officer, declare: That I am a peace officer with **Tulsa Police Department**, County of **Tulsa** State of Oklahoma. That on the **9th** day of **May** 20___, I observed (name of subject) **Ronald Wade** at (location) **contacted by email at 907 S Detroit Ave Tulsa OK** in Tulsa County, State of Oklahoma, and that at _____ a.m./p.m., this person was taken into protective custody.

That the reason for taking this person into protective custody is based on the following facts, circumstances, and personal observations of the officer I was called by Jason Robertson to investigate threatening emails sent by Ron Wade. Robertson is a lawyer hired by the City of Glenpool to represent them in a lawsuit filed by Ron Wade. After the lawsuit was dismissed several times, Ron Wade begin to sent Robertson emails that stated he knows where Robertsons lives and what his family looks like. Wade has continued to send emails to Robertson even after being told to stop by law enforcement. On 050918, Wade sent over twenty emails to the Warren Fondation located at 6585 S Yale Ave. One of the emails stated, that he (Wade) was going to "Take out an attorney and two judges." The next email stated that "Jason was going to burn now", and he was "Going to send Jason's family to a place to heal." Wade has been focused on Robertson for over a week and has sent his over 40 threatening emails. TPD has completed three threatening letter reports. Wade also posted on Facebook today, that he was going to Robertson's law office located at 907 S Detroit and pu this to end, "The only question I have to ask myself is how spectacular do I want the end to be because it will end and I can make it the media event of well....forever."

That upon such basis, I have a reasonable belief that this person has a mental illness or is alcohol- or drug-dependent to a degree that immediate emergency action is necessary and should be held in protective custody, as provided by the Mental Health Law of the State of Oklahoma.

_____
SIGNATURE OF PEACE OFFICER

        **Don Deramus**
Please Print Name and Badge Number

        **Tulsa Police Derpatment**
Identity of Law Enforcement Agency


WADE,RONALD GENE JR.
CSN: 352690379  MRN: 8841411
5/15/2018 Sarah Ann Bliss, Md
DOB 3/23/1956 62Y M CAU No active

*Version 2 2011*

338516

No. 1259