UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RONALD G. WADE, JR., )
 )
      Plaintiff, )
 )
v. ) Case No. 19-cv-120-JED-FHM
 )
CITY OF TULSA, et al. )
 )
 )
      Defendants. )

## OPINION AND ORDER

**I.    Plaintiff's Claims**

In his Amended Complaint (Doc. 4), the plaintiff asserts claims under 42 U.S.C. § 1983 and state tort claims against the City of Tulsa and Officer Don Deramus of the Tulsa Police Department (TPD). The plaintiff alleges that his constitutional rights under the Fourth and Fourteenth Amendments were violated when Officer Deramus took plaintiff into protective custody upon allegations that he threatened a Tulsa attorney, Jason Robertson, and his family.[1]

Plaintiff asserts that his detention was without probable cause, premised upon manufactured evidence, and resulted in his detention in mental health facilities for 34 days. (Doc.

---

[1] Plaintiff has filed several related lawsuits. Plaintiff's issues with attorney Jason Robertson apparently began when Robertson, representing the City of Glenpool, was successful in having plaintiff's suit against the City of Glenpool dismissed. (*See* CJ-2016-1105, Tulsa County District Court). Thereafter, plaintiff filed suit against several Glenpool employees, who were also represented by Mr. Robertson. (CS-2017-3452, Tulsa County District Court). That action was also dismissed pursuant to the Oklahoma Governmental Tort Claims Act. (*Id.*, September 1, 2017 Order). Plaintiff attempted to add Robertson's law firm and other parties in that case. (*See id.*, docket). Plaintiff later filed an action in this District, 18-CV-102-GKF-FHM, against the Tulsa County District Court, Court Clerk, Mr. Robertson, Tulsa County Judges Kirsten Pace and William Musseman, the City of Glenpool, OMAG, and Mr. Robertson's law firm. Judge Frizzell dismissed that Complaint, with prejudice. Sixteen days after the plaintiff filed the instant suit before the undersigned, he filed another lawsuit against the City of Tulsa, as well as TPD Chief Chuck Jordan, "Internal Affairs," and the Mayor of Tulsa, G.T. Bynum. (*See* 19-CV-158-TCK-JFJ).

4 at 15). The plaintiff alleges that his detention was the result of a Peace Officer's Statement for Protective Custody (Doc. 4 at 23), completed by TPD Officer Deramus. The plaintiff isolates one particular sentence in Officer Deramus's Statement, which provides: "Ron Wade began to sent [sic] Robertson emails that stated he knows where Robertsons [sic] lives and what his family looks like." (*See* Doc. 4 at 3, 23). Plaintiff alleges that sentence was a "falsified threat" that was "inserted" by Deramus "so the Plaintiff could be picked up . . . as representing a clear threat to the well being of Mr. Robertson and his family." (Doc. 4 at 3).

In support of his § 1983 claim against Officer Deramus, the plaintiff also alleges that, when he was taken into protective custody, he asked Officer Deramus for the justification for his detention, and Officer Deramus refused to provide the Peace Officer's Statement to him, in violation of *Okla. Stat.* tit. 43A, § 5-207. That statute provides that "[t]he officer shall give a copy of the [peace officer's] statement to the person or the person's attorney upon the request of either." (*See* Doc. 4 at 8 [alleging a violation of § 5-207(C)]). After Deramus transported the plaintiff to the Tulsa Center for Behavioral Health (TCBH), the intake doctor there permitted the plaintiff to read Deramus's statement. (*Id.*).

In his Third Cause of Action, plaintiff alleges that Officer Deramus, along with attorney Jason Robertson, violated § 1983 by causing a continued prosecution and threat of confinement of the plaintiff. (*See id.* at 17). As part of his Sixth Cause of Action under the Oklahoma Governmental Tort Claims Act, plaintiff also references a violation of the Fourteenth Amendment to the United States Constitution because Officer Deramus transported plaintiff to a mental facility "where it was customary to immediately control patients with psychiatric drugs." (*Id.* at 20).

For his § 1983 claim against the City of Tulsa, plaintiff asserts that "the only 'duty of care' for the City of Tulsa was to produce a single email containing the base threat [against the Tulsa

attorney], that should have been possessed by Officer Deramus, all along." (Doc. 4 at 16). Plaintiff further alleges in conclusory fashion that the City "maintained and permitted an official and custom of permitting the occurrence of the types of wrongs set forth herein above and hereafter," and had a "policy of allowing arrests without probable cause and failing to obtain pertinent exculpatory and inculpatory evidence." (Doc. 4 at 16). Plaintiff further alleges that the City's "policies and customs include the deliberate indifference in the training of it's [sic] officers in making lawful detentions," "express and/or tacit encouragement and acceptance of detentions/arrests without probable cause, the ratification of police misconduct, and the failure to conduct adequate investigation of police misconduct, such that future violations do not occur." (*Id.*). Regarding causation, plaintiff asserts that he is "informed and believes . . . that the customs and policies were the moving force behind the violations of Plaintiff's rights." (*Id.*). The Amended Complaint also alleges tort claims for negligence, malicious prosecution, and assault by officers against the City of Tulsa. (*Id.* at 19-20).

The defendants have moved to dismiss (Doc. 9, 29). The plaintiff filed responses (Doc. 13, 30).

## II. Applicable Dismissal Standards

To survive dismissal for failure to state a claim, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted).

Plaintiff is proceeding pro se. While pro se pleadings must be liberally construed and must be held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404

3

U.S. 519, 520 (1972), a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *Garret v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

## III. Claims Against Officer Deramus

### A. Section 1983 Claims

#### 1. Duplicative "Official Capacity" Claim Against Officer Deramus

Officer Deramus first notes that the plaintiff purports to include him as a defendant both "individually and in his official capacity." (Doc. 29 at 4; *See* Doc. 4 at 1). A suit against an official in his or her official capacity is the same as asserting a claim against the municipality the official represents and is considered under the standards applicable to 42 U.S.C. § 1983 claims against municipalities. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Because plaintiff has also named the City as a defendant, and standards governing municipal liability apply to that claim just as they apply to an official capacity claim, any official capacity suit against Officer Deramus is duplicative and should be dismissed.

## 2. Qualified Immunity

Officer Deramus asserts qualified immunity. (Doc. 29 at 6-10). Where qualified immunity is raised at the dismissal stage, the Court must accept all well-pleaded allegations as true and view them in a light most favorable to the plaintiff. *See Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show – when taken as true – the defendant plausibly violated [plaintiff's] constitutional rights, which were clearly established at the time of the violation." *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). "When a defendant asserts qualified immunity, . . . the burden shifts to the plaintiff to establish (1) a violation of a constitutional right (2) that was clearly established." *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). This is a "'heavy, two-part burden' that the plaintiff must meet," and "[f]ailure on either element is fatal to the plaintiff's claims." *Id.* (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

"The plaintiff bears this heavy burden because we presume that law enforcement officers 'are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs.'" *Puller*, 781 F.3d at 1196 (quoting *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011)). The courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### a. Alleged Constitutional Violation

Here, the plaintiff contends that his constitutional rights were violated by Officer Deramus's Statement for Protective Order, which allegedly contained a false statement. The plaintiff also argues that the "core issue" in this case "is whether probable cause can legally exist." (Doc. 30 at 1). Under the language of the applicable Oklahoma statute, "[a]ny peace officer who

reasonably believes that a person is a person requiring treatment as defined in Section 1-103 of this title shall take the person into protective custody." *Okla. Stat.* tit. 43A, § 5-207(B)(1). "'Person requiring treatment' means a person who because of his or her mental illness . . . has placed another person or persons in a reasonable fear of violent behavior directed towards such person or persons or serious physical harm to them as manifested by serious and immediate threats." *Id.*, § 1-103(13)(a)(3). Upon the reasonable belief that a person meets that definition, the person may "be transported to an appropriate medical facility for medical treatment" where a "treating physician may authorize that the person be detained until the person becomes medically stable." *Id.*, § 5-207(E).

In a similar context regarding alleged false statements in an affidavit for a warrant, the courts have held that a law enforcement official violates the Fourth and Fourteenth Amendments by knowingly, or with reckless disregard for the truth, making a false statement that was necessary to a determination of probable cause. *See, e.g., Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990); *see also Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991) (citing cases). In such a case, the Court "measure[s] probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller*, 781 F.3d at 1197 (citing *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)). Once that test is applied, if the modified affidavit still provides sufficient information for a finding of probable cause, the plaintiff cannot establish a constitutional violation. *See id.* at 1200 (citations omitted).

In this case, the plaintiff repeatedly avers that *one sentence* in Officer Deramus's Statement for Protective Custody was false: "Ron Wade began to sent [sic] Robertson emails that stated he

6

knows where Robertsons [sic] lives and what his family looks like." (*See* Doc. 4 at 3, 23). According to plaintiff, that sentence was a "falsified threat" that was "inserted" by Deramus "so the Plaintiff could be picked up under [*Okla. Stat.* tit. 43A] § 1-103, as representing a clear threat to the well being of Mr. Robertson and his family." (Doc. 4 at 3). While the plaintiff focuses on only one sentence, the *full statement* by Officer Deramus referred to a call from Mr. Robertson about threats, as well as *several* threats to Robertson and others:

> I was called by Jason Robertson to investigate threatening emails sent by Ron Wade. Robertson is a lawyer hired by the City of Glenpool to represent them in a lawsuit filed by Ron Wade. After the lawsuit was dismissed several times, Ron Wade begin to sen[d] Robertson emails that stated he knows where Robertsons [sic] lives and what his family looks like. Wade has continued to send emails to Robertson even after being told to stop by law enforcement. On 05/09/18, Wade sent over twenty emails to the Warren Foundation . . . One of the emails stated, that he (Wade) was going to "Take out an attorney and two judges." The next email stated that "Jason was going to burn now," and he was "Going to send Jason's family to a place to heal." Wade has been focused on Robertson for over a week and has sent hi[m] over 40 threatening emails. TPD has completed three threatening letter reports. Wade also posted on Facebook today, that he was going to Robertson's law office . . . and put this to end, "The only question I have to ask myself is how spectacular do I want to the end to be because it will end and I can make it the media event of well….forever."

(Doc. 4 at 23).

Removing the sentence that the plaintiff alleges to be false does not vitiate probable cause. In other words, without that sentence, Officer Deramus's statement still contained sufficient information to establish probable cause to believe that the plaintiff posed a threat to others or (in the language of the Oklahoma statute) a "reasonable belie[f] that" plaintiff was "a person requiring treatment as defined in Section 1-103." *Okla. Stat.* tit. 43A, § 5-207(B)(1). That is because, without the allegedly false assertion that plaintiff sent emails that he knew where Robertson lives and what his family looks like, Deramus's Statement provided information about additional threats, including the following: (1) Jason Robertson called Deramus about threatening emails; (2)

7

in one day, plaintiff sent over 20 emails to the Warren Foundation, one of which stated that plaintiff was going to "[t]ake out an attorney and two judges"; (3) in another email, plaintiff stated that "Jason [Robertson] was going to burn now" and plaintiff would "send Jason's family to a place to heal"; (4) plaintiff sent Robertson over 40 threatening emails; (5) TPD had completed three threatening letter reports; (6) plaintiff continued to send emails to Robertson after law enforcement informed him he should stop; and (7) on the day Deramus signed the statement, the plaintiff posted on Facebook that he was going to Robertson's law office and stated that "[t]he only question I have to ask myself is how spectacular do I want the end to be because it will end and I can make it the media event of well …. forever." (Doc. 4 at 23). Thus, Deramus's Statement referenced numerous other threats by the plaintiff, which would support a reasonable belief that he had placed persons "in a reasonable fear of violent behavior . . . or serious physical harm to them as manifested by serious and immediate threats" and he was not going to stop the threatening communications. *Id.*, § 1-103(13)(a)(3). As a result, the plaintiff cannot establish a violation of the Fourth Amendment.

As part of the § 1983 claim in his First Cause of Action, plaintiff also asserts that Officer Deramus refused to provide him the written Statement, in violation of *Okla. Stat.* tit. 43A, § 5-207(C). (*See* Doc. 4 at 8). According to plaintiff's allegations, he did not see the Statement until two or three hours later, after he had been transported to TCBH. (*Id.*; *see also* Doc. 30 at 23-24). The rights being vindicated under § 1983 are *federal* rights, and a violation of a state law or regulation does not in itself establish a violation of the United States Constitution. *See Davis v. Scherer*, 468 U.S. 183, 194-96 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision."); *Cummings v. Dean*, 913 F.3d 1227, 1243-45 (10th Cir. 2019) (even

if state law may be relevant, the plaintiff must allege a violation of rights under *federal* law); *Erikson v. Pawnee County Bd. Of County Comm'rs*, 263 F.3d 1151, 1153, n.2 (10th Cir. 2001). The plaintiff has not stated a claim under § 1983 for an alleged violation of the state statute.

In his Third Cause of Action, plaintiff alleges that Officer Deramus, "in concert with" attorney Jason Robertson and Tom Cooper, President of the Warren Foundation, violated § 1983 by causing the continued prosecution and threat of confinement of the plaintiff. (*See* Doc. 4 at 17; *see also id.* at 7). That claim does not state a plausible claim for relief, as it is bereft of any factual allegations that are distinct from his First Cause of Action, which is deficient as noted above.[2]

The Court also notes that much of the conduct of which plaintiff complains was the result of mental health facility staff determining that he was not stable to leave their facilities, and those determinations were – by plaintiff's own allegations – based at least in part upon plaintiff's own conduct. For example, according to plaintiff, he was uncooperative at TCBH, he went on a hunger strike and refused to accept any treatment or to provide any information to mental health staff, while demanding to see the email in which he allegedly referred to knowing where Robertson lives and what his family looks like. (*See* Doc. 4 at 8-11). He was later transferred to Laureate, where he continued to inform mental health staff that he "just wanted the email, so the Plaintiff could begin therapy." (*Id*. at 11). Plaintiff's pleading contains numerous complaints regarding the mental health staff, including one doctor's determination that the plaintiff was "homicidal." (*Id.*). After 18 days in mental health custody, the plaintiff alleges that he made up a "trauma" about his ex-wife and made her a "villain," which elicited tears from him, and he was subsequently released on May 31, 2018, after 22 days. (*Id.*). During his first outpatient appointment on June 6, 2018,

---

[2] With respect to the plaintiff's allegation that Robertson violated § 1983, Judge Frizzell dismissed plaintiff's § 1983 claim against Mr. Robertson because he is not a state actor. (*See* 18-CV-102-GKF-FHM, Doc. 25 at 3-4).

plaintiff refused to complete paperwork. Two days later, he was thus picked up by Tulsa County Deputies and transported back to TCBH, due to non-compliance with his treatment plan. (*Id.* at 12). He then spent an additional 12 days at TCBH. (*Id.*). Plaintiff also alleges that he suffered injury, including a rare blood disorder, from medications he was prescribed in the mental health institutions. (*See id.* at 13-14). Plaintiff has cited no authority that would place responsibility upon Officer Deramus for the mental health staff's determination to detain the plaintiff in those facilities until such time as they believed he was stable enough to leave.[3]

As part of his Sixth Cause of Action under the Oklahoma Governmental Tort Claims Act, plaintiff also references a violation of the Fourteenth Amendment to the United States Constitution because Officer Deramus transported plaintiff to a mental facility "where it was customary to immediately control patients with psychiatric drugs." (Doc. 4 at 20). His Amended Complaint is devoid of any facts, and he has provided no law, to establish that Officer Deramus was responsible for TCBH's or Laureate's prescription of psychiatric drugs to the plaintiff.

In short, the plaintiff has not alleged sufficient facts to state any plausible claims against Officer Deramus for a violation of the plaintiff's federal constitutional rights. Accordingly, Officer Deramus is entitled to qualified immunity on those claims under the first component of the qualified immunity analysis.

---

[3] Under Oklahoma law, once a person has been detained pursuant to *Okla. Stat.* tit. 43A, § 5-207, the person "shall be subject to an initial assessment at the appropriate facility by a licensed mental health professional within twelve (12) hours of being placed in protective custody for the purpose of determining whether emergency detention . . . is warranted." *Id.*, § 5-208. According to plaintiff's own allegations, he was detained by mental health professionals upon their determinations, following his refusal to cooperate.

### b. Clearly Established Law

A constitutional right is clearly established where a Tenth Circuit or Supreme Court precedent is on point such that the unlawfulness of the questioned conduct was apparent to the officer at the time of the challenged conduct. *See Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The courts are "not to define clearly established law at a high level of generality," although "a case directly on point" is not required so long as "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011); *see also Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 741)); *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017); *Kisela*, 138 S. Ct. at 1152. "[A] right is clearly established when a precedent involves 'materially similar conduct' or applies with 'obvious clarity' to the conduct at issue." *Id.* (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016)). Thus, officers are entitled to qualified immunity "absent a precedent that 'squarely governs' the specific facts at issue." *Kisela*, 138 S. Ct. at 1153.

Even if the plaintiff had alleged facts sufficient to state a plausible claim that Officer Deramus violated a constitutional right, plaintiff has not met his burden to provide authority that such a right was clearly established in the law on May 9, 2018 when Deramus signed the Statement for Protective Custody and transported plaintiff to TCBH. Indeed, plaintiff repeatedly acknowledges in his response that there is a "Lack of Case Law," "there is no case law to cover the circumstances presented by the Plaintiff's case," and "[t]here is no case law." (Doc. 30 at 18-19). Elsewhere in his brief, he cites general principles under *Brady v. Maryland*, 373 U.S. 83

(1963), for the alleged failure of the defendants to produce exculpatory evidence to him. However, plaintiff has not set forth facts that would indicate that *Brady* is applicable to his situation, and he has not identified any Supreme Court or Tenth Circuit case that would have provided clear notice to Officer Deramus that failing to provide the plaintiff the peace officer statement would somehow be a violation of his federal rights. Officer Deramus is accordingly entitled to qualified immunity on both the first and second prongs of the analysis.

### B. State Law Claims

Officer Deramus also moves to dismiss any state law claims asserted by the plaintiff. (Doc. 29 at 10-11). The plaintiff did not respond regarding the state law claims, such that it is unclear whether he intended to pursue them against Officer Deramus. (*See* Doc. 30). The plaintiff's Amended Complaint references Deramus in his Sixth Cause of Action under the Oklahoma Governmental Tort Claims Act (OGTCA), for an alleged "assault by officers." (Doc. 4 at 20). As the basis for that claim, he asserts that Deramus transported plaintiff to a mental facility "where it was customary to immediately control patients with psychiatric drugs." (*Id.*).

The plaintiff has not alleged *any* facts (or law) that would render Officer Deramus responsible for the mental health officials' administration of psychiatric drugs to the plaintiff, which is the basis of his Sixth Cause of Action. Under state law, after Officer Deramus took him to TCBH, it was the duty of mental health officials to determine whether to detain the plaintiff and how to treat him. *See Okla. Stat.* tit. 43A, §§ 5-207(E), 5-208. Accordingly, plaintiff has failed to state any plausible state claim against Officer Deramus.

## IV. Claims Against the City of Tulsa

### A. Section 1983 Claims

Plaintiff's Second Cause of Action asserts that the City violated the plaintiff's civil rights by "maintain[ing] and permit[ing] an official [sic] and custom of permitting the occurrence of the types of wrongs set forth herein above and hereafter." (Doc. 4 at 16). He further alleges that the City had a "policy of allowing arrests without probable cause and failing to obtain pertinent exculpatory and inculpatory evidence," and "deliberate indifference in the training of it's [sic] officers in making lawful detentions." (*Id.*). In addition, the plaintiff avers that "[t]hese policies and customs also include express and/or tacit encouragement and acceptance of detentions / arrests without probable cause, the ratification of police misconduct, and the failure to conduct adequate investigation of police misconduct, such that future violations do not occur." (*Id.*).

A municipality may not be held liable under § 1983 solely because its employee inflicted injury; municipal liability cannot be found by application of the theory of *respondeat superior*. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). To hold a municipality liable under § 1983, a plaintiff must prove (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "whether there is a direct causal link between [the] policy or custom and the alleged constitutional deprivation"). *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694 (citations omitted). The requirement of a policy or custom distinguishes the "acts of the municipality from acts of

13

employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479.

With respect to plaintiff's failure to train theory, the Supreme Court has reiterated that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. A municipality may only be liable where "the need for more or different training is so obvious, and the inadequacy [in training] so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. The Supreme Court has thus recognized "limited circumstances in which an allegation of a 'failure to train' can be the basis for [§ 1983 municipal] liability." *Canton*, 489 U.S. at 387. In *Connick*, the Supreme Court further elaborated on the deliberate indifference required to impose municipal liability under § 1983 for a failure to train:

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities. . . ."
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference'- necessary to trigger municipal liability." Without notice in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

563 U.S. at 61-62 (internal citations and quotations omitted).

Despite multiple opportunities to do so, the plaintiff has not alleged facts that state any plausible § 1983 claim against the City of Tulsa. First, the allegations of the Amended Complaint do not state a plausible claim for a violation of the plaintiff's constitutional rights by any City actor that would support any maintenance of a claim against the City under *Monell*. *See, e.g., Hinton v. City of Elwood, Kan.*, 997 F.2d 774, (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers"); *Camuglia v. City of Albuquerque*, 448 F.3d 1214, (10th Cir. 2006) (determining City was also entitled to summary judgment where the court determined that there had been no underlying constitutional violation).

Second, the plaintiff has not identified any specific policy or custom that was the moving force behind any constitutional violation. Conclusory allegations of a "policy of allowing arrests without probable cause and failing to obtain pertinent exculpatory and inculpatory evidence," and "deliberate indifference in the training of it's [sic] officers in making lawful detentions" are devoid of any *facts* that would plausibly state a claim against the City under *Monell* or *Connick*, because the plaintiff has not identified a specific training deficiency or a pattern of constitutional violations by untrained City employees in similar situations. *See Connick*, 563 U.S. at 61-62.

In response to the City's dismissal motion, the plaintiff does not address the City's specific arguments, but instead asserts that "[t]his is not a traditional 'in capacity' case" because the "City of Tulsa is on trial for their supervisory role over Officer Deramus, but also is on trial for their own felonious conduct." (Doc. 13 at 1). Plaintiff references a number of additional vague and conclusory "policies" allegedly maintained by the City, including: (1) a "public policy that Peace Officer's [sic] cannot manufacture evidence and the City of Tulsa has the nerve to come into a Federal Courtroom and argue there are exceptions" (*id.* at 4); (2) "a consistent policy or custom of corruption" (*id.* at 8); (3) a policy of "accepting and condoning the egregious conduct of Officer

15

Deramus . . . as clearly reflected in their Motion to Dismiss" (*id.* at 13); (4) an unspecified "morally bankrupt policy," and (5) "a policy allowing the manufacture of evidence." (*id.* at 14). Those allegations are, again, devoid of any factual information about a particular policy or custom, any pattern of constitutional violations by officers in similar situations, or any specific training deficiency. Even if included in the Amended Complaint, those additional allegations from plaintiff's response would still not state a claim against the City, as they amount to nothing more than hyperbolic characterizations rather than factual averments of any specific policy or custom.

Third, plaintiff has merely recited elements, rather than alleging particular facts that would plausibly show requisite elements are met. One example is the plaintiff's allegation that the City "maintained and permitted an official [sic] and custom of permitting the occurrence of the types of wrongs set forth herein above and hereafter," which merely asserts that the City had an unspecified custom. With respect to causation, plaintiff similarly alleges in conclusory fashion that he is "informed and believes . . . that the customs and policies were the moving force behind the violations of Plaintiff's rights." (Doc. 4 at 16). Such "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient to state a cause of action. *See Twombly*, 550 U.S. at 555. Plaintiff's Amended Complaint does not contain sufficient factual allegations "to raise a right to relief above the speculative level" on his § 1983 claims against the City of Tulsa. *Id.* at 555-56, 570.

**B.  State Law Claims**

The City moves to dismiss plaintiff's state law claims. The City first notes that the plaintiff's allegations that Officer Deramus's actions were criminal, intentional and malicious, and amounted to fabrication and manufacture of evidence (*see* Doc. 4 at 4, 15, 18), do not plausibly state a basis for any tort claim against the City under the OGTCA, because such allegations clearly

indicate that Officer Deramus was *not* acting in the scope of his employment. The OGTCA precludes tort actions against "an employee of the state or political subdivision acting within the scope of his employment." *Okla. Stat.* tit. 51, § 163(C); *see also id.*, §§ 152.1(A), (B), 153(A), (B). "'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority. . . ." *Okla. Stat.* tit. 51, § 152(12).

Oklahoma courts have determined that claims with malice as a necessary element – such as malicious prosecution claims – may not be maintained against a municipality under the OGTCA because the malice element necessarily negates the good faith necessary to showing an employee acted in the scope of employment. *See, e.g., Douglas v. Miller*, 864 F. Supp. 2d 1205, 1221 (W.D. Okla. 2012) (quoting *Parker v. City of Midwest City*, 850 P.2d 1065, 1067 (Okla. 1993)); *see also Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165-66 (Okla. 2009).[4]

The City also argues that the plaintiff has failed to state a plausible claim for negligence under the factual allegations of the Amended Complaint. The Court agrees. As noted, *supra*, the plaintiff only challenges one sentence in Officer Deramus's statement. The balance of the Statement referenced numerous other threats that supported probable cause or a reasonable belief that the plaintiff was in need of treatment, in accordance with Oklahoma law.

The plaintiff's assertions that his rights were violated during the 34 days of detention over two separate time-frames do not state any plausible claim against the City of Tulsa, because mental

---

[4] Plaintiff's malicious prosecution claim fails in any event, because his factual allegations do not indicate that he was ever prosecuted, that there was a lack of probable cause, or that he was exonerated or that any prosecution was terminated in his favor. *See Parker*, 850 P.2d at 1067 (The elements of a malicious prosecution action are "(1) the bringing of the original action by the defendant; (2) its successful termination in favor of the plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages."); *Erikson*, 263 F.3d at 1154-55.

health officials at TCBH and Laureate were responsible for determining whether to detain and how to treat the plaintiff under Oklahoma law. *See Okla. Stat.* tit. 43A, §§ 5-207, 5-208. Plaintiff has also not alleged that either Officer Deramus or the City had any duty or responsibility with respect to the prescription of any psychiatric drug.

In his Fifth Cause of Action, the plaintiff alleges that he "was forced to violate his own rights, every time he spoke," and he complains that the City of Tulsa did not respond to his tort claim and left it open. (*See* Doc. 4 at 20). As a matter of law, that allegation does not state any cognizable claim under Oklahoma law, which expressly provides that "a claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days." *Okla. Stat.* tit. 51, § 157(A).

In his response brief, rather than respond to the City's specific arguments regarding his state law claims, the plaintiff asserts that "this is not a typical case and the City is not being sued as the entity responsible for Officer Deramus, but is being sued because every time the Plaintiff wrote the City, the City made a conscious decision to cover-up the innocence of the Plaintiff and hide the guilt of Officer Deramus." (Doc. 13 at 13). Plaintiff offers no legal authority that would recognize any such claim under Oklahoma law. (*See id.*).

The plaintiff has not alleged facts that state any plausible claim against the City of Tulsa under Oklahoma law.

V.  **Conclusion**

The defendants' dismissal motions (Doc. 9, 29) are **granted**. Officer Deramus is entitled to qualified immunity on the plaintiff's § 1983 claims against him, and those claims are thus dismissed with prejudice.

Despite plaintiff's numerous filings, he has not articulated any additional facts that would state a plausible claim under § 1983 or state law. Instead, he has merely lodged more inflammatory and conclusory allegations, lacking any factual content. (*See, e.g.,* Doc. 13 at 1-2 [Alleging that the City engaged in "felonious conduct," "a conspiratorial felony," "a cover up," and is "the epitome of a corrupt municipality that encourages false evidence violations, because the executives of the municipality don't respect or follow the law"]; *see also id.* at 2 [Alleging that City officials are "perpetrators" who should be in "prison" and "Mayor Bynum is up for prison," and asking this Court to "send a wake up call to Tulsa, before the entire City is booked into jail"); *id.* at 3 [Asserting that arguments in the City's dismissal motion – which cites Oklahoma law regarding protective custody – are "slanderous" and constitute "an additional deceptive felony" by the City's attorneys]; *id.* at 5 [Arguing that "Officer Deramus is a liar, felon and corrupt cop of the lowest caliber and knew his employer was just as corrupt as him"]).[5] Conclusory allegations that City officials should be in prison for felonious conduct do not state a claim.

In short, despite his numerous filings, plaintiff has not alleged sufficient *facts* to state any cognizable, plausible claim against the defendants. The Court thus concludes that it would be futile to permit another amendment by plaintiff. As a result, the plaintiff's claims are dismissed without leave to amend. A judgment of dismissal will be entered forthwith.

In light of the dismissal of the plaintiff's claims against the defendants, the plaintiff's motions to reduce relief requested (Doc. 28) and for summary judgment (Doc. 31) are moot.

SO ORDERED this 9th day of August, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Mayor Bynum is not named as a party in this case. He has been named in Case No. 19-CV-158-TCK-JFJ, which is pending before Judge Kern.